## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**BENJAMIN MICKEY PITTS**
**ADC #148011**                                                            **PETITIONER**

**VS.**                           **NO. 4:22-cv-00756-JM-ERE**

**DEXTER PAYNE,**
**Director Arkansas Division of Correction**                  **RESPONDENT**

### RECOMMENDED DISPOSITION

This Recommendation has been sent to United States District Judge James M.

Moody, Jr. You may file written objections to all or part of this Recommendation.

Any objections filed must: (1) specifically explain the factual and/or legal basis for

the objection; and (2) be received by the Clerk of this Court within fourteen days of

the date of this Recommendation. If you do not object, you risk waiving the right to

appeal questions of fact and Judge Moody can adopt this Recommendation without

independently reviewing the record.

## I.      Introduction

Benjamin Mickey Pitts, an inmate at the Varner Unit of the Arkansas Division

of Correction, has filed a petition for habeas corpus and supporting brief pursuant to

28 U.S.C. § 2254. *Docs. 2, 3*. For reasons that follow, the Court recommends that

Mr. Pitts' habeas petition be dismissed with prejudice.

## II.    Background

On April 30, 2014, at approximately 5:00 p.m., Steven Leroy Swanigan, wearing a mask, burst into an apartment with a gun in each hand and started shooting, killing a woman and seriously injuring the woman's infant daughter and an adult male. Another masked person, later determined to be Mr. Pitts, followed Mr. Swanigan into the apartment, and after the shooting, he and Mr. Swanigan fled the scene in a white Cadillac with a blue roof.

A few days later, police arrested Mr. Swanigan and Mr. Pitts, and both men eventually were charged with murder in connection with the April 30 shooting.

On October 26, 2017, a jury in the Circuit Court of Garland County, Arkansas convicted Mr. Pitts of second-degree murder, two counts of first-degree battery, possession of a firearm by certain persons, and aggravated residential burglary. *Pitts v. State*, 2019 Ark. App. 107, 1, 571 S.W.3d 64, 66, (2019). He was sentenced to eighty years in the Arkansas Division of Correction.[1]

Mr. Pitts appealed his conviction, arguing that the trial court committed reversable error by: (1) denying his motion to dismiss for lack of a speedy trial under Rule 28.1 of the Arkansas Rules of Criminal Procedure; and (2) denying his motion

---

[1] At a separate, earlier trial, Mr. Swanigan was convicted on one count of first-degree murder and two counts of first-degree battery. *Swanigan v. State*, 577 S.W.3d 737, 741, 2019 Ark. App. 296, 1 (2019).

to suppress inculpatory statements he made to his parole officer. *Doc. 9-8 at 13, 177-188*.

On February 20, 2019, the Arkansas Court of Appeals affirmed Mr. Pitts' convictions. *Pitts v. State*, 2019 Ark. App. at 1, 571 S.W.3d at 66. On April 3, 2019, the court denied Mr. Pitts' *pro se* petition for rehearing and issued a mandate affirming the judgment of conviction. *Pitts v. Arkansas*, No. 18-424 (Ark. Ct. App. April 3, 2019). Mr. Pitts did not seek discretionary review from the Arkansas Supreme Court.

Mr. Pitts subsequently filed three *pro se* petitions for postconviction relief, pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. The trial court denied each motion, without prejudice, for failure to comply with page margin requirements. *Doc. 9-11 at 180-181, 192-193*.

On September 19, 2019, with the trial court's permission, Mr. Pitts filed a fourth Rule 37 petition, asserting that his trial counsel rendered ineffective assistance by failing to: (1) challenge his arrest; (2) challenge the trial court's denial of his motion to suppress inculpatory statements; (3) perfect his direct appeal; (4) perform a reasonable, pretrial investigation; (5) present exculpatory evidence; (6) object to false testimony; (7) object to the exclusion of a 42-day period for speedy-trial purposes; (8) request a change of venue; and (9) "hide" from the jury that Mr. Pitts is a felon. *Doc. 9-11 at 194-199*.

On February 7, 2020, the trial court denied Mr. Pitts' Rule 37 petition on the merits. *Id. at 304-311*. Mr. Pitts appealed, and on May 12, 2021, the Arkansas Court of Appeals affirmed. *Pitts v. State*, 2021 Ark. App. 242, 624 S.W.3d 700 (2021).

On April 14, 2021, while his Rule 37 appeal was still pending, Mr. Pitts tendered a *pro se* coram nobis petition in the Arkansas Supreme Court, alleging that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). On October 12, 2021, the Arkansas Supreme Court denied the petition. *Pitts v. State*, 2021 Ark. 178, 2021 WL 4890831 (2021).

On July 22, 2021, while the coram nobis petition was pending, Mr. Pitts filed a habeas petition in the Circuit Court of Lincoln County, Arkansas, asserting that: (1) the trial court erred in denying his motion to dismiss for lack of a speedy trial under Rule 28; and (2) his trial counsel rendered ineffective assistance by agreeing that the 42-day period between October 7 and November 14, 2014 was excludable for speedy trial purposes. *Doc. 9-19*. On January 31, 2022, the court denied the petition as untimely. *Doc. 9-20.* Mr. Pitts did not appeal.

On August 24, 2022, Mr. Pitts filed the § 2254 petition now before the Court alleging: (1) ineffective assistance of trial counsel for permitting the trial court to charge a 42-day period of pretrial delay to the defense; (2) prosecutorial misconduct for allowing perjured testimony and making improper closing arguments; (3) ineffective assistance of appellate counsel for failing to raise prosecutorial

misconduct on direct appeal; (4) prosecutorial misconduct for *Brady* violations; (5) ineffective assistance of trial counsel for failure to object to improper closing argument; (6) ineffective assistance of appellate counsel for not challenging on direct appeal the trial court's alternative basis for denying Mr. Pitts' motion to suppress; (7) trial court error for denying Mr. Pitts' motion to dismiss for lack of a speedy trial; (8) trial court error for denying Mr. Pitts' motion to suppress inculpatory statements; and (9) insufficient evidence to support Mr. Pitts' convictions.[2]

On September 29, 2022, Respondent filed a response (*Doc. 9*) asserting the following grounds for dismissal: (1) Mr. Pitts' petition is time-barred (*Id. at 6-12*); (2) Claim 1 is without merit (*Id. at 31*-38); (3) Claims 2, 3, 5, and 9 are procedurally defaulted, and the default is unexcused (*Id. at 27-31*); (4) Claims 4, 6, and 8 are entitled to deference under 28 U.S.C. § 2254(d) (*Id. at 13-27*); and (5) Claim 7 is not cognizable in federal habeas. *Id. at 12-13*.

On October 14, 2022, Mr. Pitts filed a reply addressing Respondent's arguments for dismissal. *Doc. 11*. With leave of Court, he filed an additional reply and supporting brief on November 15, 2022. *Docs. 15-16*.

---

[2] Mr. Pitts' petition is difficult to follow because he fails to clearly state and demarcate his asserted grounds for relief. Mr. Pitts' reply, however, adopts and states no objection to Respondent's numbering and description of his claims. Compare *Doc. 9 at 5-6* with *Docs. 11, 15*. The Court therefore adopts Respondent's description of Mr. Pitts' asserted grounds for relief.

## III.   Discussion

### A.   Mr. Pitts' § 2254 Petition is Timely Filed

#### 1.   Mr. Pitts Must Rely on Statutory or Equitable Tolling to Extend the One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations for a state prisoner's federal habeas petition challenging a state conviction. 28 U.S.C. § 2244(d)(1). The limitation period begins to run from the latest of four alternative dates, and the applicable date in this case is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On February 20, 2019, the Arkansas Court of Appeals denied Mr. Pitts' direct appeal, and his time to seek review by the Arkansas Supreme Court expired nineteen days later, on March 11, 2019.[3] Mr. Pitts did not seek review from the Arkansas Supreme Court, so the one-year AEDPA statute of limitations began running the next day, March 12, 2019. See *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) (holding that "for a state prisoner who does not seek review in a State's highest court,

---

[3] At the time, Rule 2-4(a) of the Rules of the Supreme Court and Court of Appeals provided: "A petition to the Supreme Court for review of a decision of the Court of Appeals must be in writing and must be filed within 18 calendar days from the date of the decision, regardless of whether a petition for rehearing is filed with the Court of Appeals." Ark. Sup. Ct. & Ct. of App 2-4 (2018). Eighteen days from February 20, 2019 was Sunday, March 10, 2019. When the last day for filing a petition for review "falls on a Saturday, Sunday, or legal holiday, the time for such action shall be extended to the next business day. Ark. R. App. P. Crim. R. 17. Accordingly, Mr. Pitts had until Monday, March 11, 2019 to file a petition for review.

the judgment becomes 'final' on the date that the time for seeking such review expires").

Mr. Pitts had one year from March 12, 2019, or until March 12, 2020, to file a federal habeas petition. Because Mr. Pitts initiated this habeas action over two years later, on August 24, 2022, his § 2254 petition is time-barred unless statutory or equitable tolling extended the one-year limitations period.

### 2. Statutory Tolling Applies to Save Mr. Pitts' § 2254 Petition From Being Time-Barred

The AEDPA's limitation period is tolled "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). A post-conviction application is *properly* filed when its delivery and acceptance comply with the state filing rules that, among other things, prescribe form requirements, including margin parameters. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

Mr. Pitts filed a total of four Rule 37 petitions in the Arkansas trial court, but only one of them was a properly filed post-conviction application. His first three Rule 37 petitions were not properly filed because they did not comply with the rules imposing margin requirements. However, his fourth Rule 37 petition was treated as timely filed and considered on the merits.[4] Thus, the one-year limitations period ran

---

[4] The Arkansas Court of Appeals specifically rejected the States' argument that Mr. Pitts' fourth Rule 37 petition was untimely. *Pitts v. State*, 624 S.W.3d 700, 706 (Ark. App. 2021).

191 days, from March 12, 2019, until September 19, 2019, the day Mr. Pitts filed his fourth Rule 37 petition, which tolled the one-year limitations period.

The trial court denied the fourth Rule 37 petition on the merits, and Mr. Pitts appealed. The Rule 37 appeal was pending through May 12, 2021, when the Arkansas Court of Appeals affirmed the trial court's denial of Mr. Pitts' Rule 37 petition and denied the State's petition for reconsideration. *Pitts v. State*, 624 S.W.3d 700, 706 (Ark. App. 2021).

Mr. Pitts did not petition the Arkansas Supreme Court to review the denial of postconviction relief. However, statutory tolling of the AEDPA filing deadline continued uninterrupted via: (1) Mr. Pitts' coram nobis petition, filed on April 28, 2021, while his Rule 37 appeal was pending; and (2) his petition for habeas corpus filed on July 22, 2021, while his coram nobis petition was pending.

Mr. Pitts had thirty days from the Lincoln County Circuit Court's January 31, 2022, denial of his habeas petition – up to and including March 2, 2022 – to appeal. *See* Ark. R. App. P. Civ. 4(a). He did not appeal, and the one-year limitation period resumed on March 3, 2022,[5] giving him 174 days – until August 24, 2022 – to file a

---

[5]   In *Streu v. Dormire*, 557 F.3d 960 (8th Cir. 2009), the Eighth Circuit held that a post-conviction petition filed in state court remains "pending" until the time for appeal expires. *Id. at 966* (citing *Williams v. Bruton*, 299 F.3d 981 (8th Cir. 2002)). Respondent suggests that *Streu* contradicts the Supreme Court's earlier decision in *Evans v. Chavis*, 546 U.S. 189 (2006). See *Doc. 9 at 10*. However, it is assumed that the Eighth Circuit considered *Evans* in deciding *Strue*, and this Court is duty bound to follow precedential decisions of the Eighth Circuit.

federal habeas petition. Even without the benefit of the prison mailbox rule, Mr. Pitts' petition in this case was received by the Clerk's Office and entered on August 24, 2022, making it timely filed.

Accordingly, the Court should reject Respondent's argument that Mr. Pitts' petition was untimely filed and proceed to address his claims for habeas relief.

### B.    Claim 1 Has No Merit

In Claim 1, Mr. Pitts argues that his first trial attorney rendered ineffective assistance by agreeing that a 42-day period of pretrial delay, from October 7 through November 18, 2014, was properly excluded from the speedy trial period under Rule 28.1(b) of Arkansas Rule of Criminal Procedure.[6]

Rule 28.1 requires the State to bring a criminal defendant to trial within 12 months of arrest, excluding periods of necessary delay authorized under Rule 28.3. A defendant not brought to trial before the speedy-trial deadline is entitled to have the charges dismissed, with an absolute bar to prosecution. Ark. R. Crim. P. 30.1(a). When a defendant establishes that trial will be held after expiration of the 12-month speedy-trial period, the State bears the burden of proving that the delay was the result

---

[6] According to Mr. Pitts, the 42-day delay occurred because the State failed to transport him to a scheduled omnibus hearing on October 7, 2014. *Doc. 1-12 at 22-22*. At that time, Mr. Pitts was in ADC custody. *Doc 9-3 at 243*. When Mr. Pitts did not appear for the omnibus hearing, the trial court rescheduled it for November 18, 2014 and asked Mr. Pitts' attorney whether he would "take the time." *Id. at 245*. Defense counsel responded: "I'm going to take the time with the understanding . . . that we did do a transport order . . . ." *Id.*

of the defendant's conduct or was otherwise legally justified. *Miles v. State*, 348 Ark. 544, 75 S.W.3d 677 (2002).

Mr. Pitts was arrested on May 8, 2014, and his trial began 1,264 days later on October 23, 2017. Before trial, Mr. Pitts unsuccessfully sought to dismiss all charges against him for lack of a speedy trial. *Doc. 9-2 at 765*. Before the trial court (and on direct appeal), Mr. Pitts agreed that a period of 888 days, from May 19, 2015 through October 23, 2017, was properly excluded from the 12-month speedy-trial period. *Pitts v. Arkansas*, 2019 Ark App. 107, 3, 571 S.W.3d 64, 67 (2019). Excluding these 888 days, 376 days transpired between Mr. Pitts' May 8, 2014 arrest and his October 23, 2017 trial. Accordingly, the State shouldered the burden to show that an 11-day delay bringing Mr. Pitts to trial was the result of Mr. Pitts' conduct or otherwise excludable. *Id*.

After a hearing, the trial court found that Mr. Pitts' trial occurred 256 days from his arrest. *Doc. 9-3 at 103*. In addition to the 888 days mentioned above, the trial court excluded two pretrial periods from the speedy-trial calculation: (1) 42 days between October 7 to November 14, 2014, which Mr. Pitts' first attorney agreed to "take" (*Id. at 99*); and (2) 78 days between March 2 through May 19, 2015, during which Mr. Pitts filed multiple motions seeking new counsel, which required a continuance of the trial date. *Id. at 101*.

10

On direct appeal, the Arkansas Court of Appeals affirmed on the sole ground that the 42-days between October 7 and November 14, 2014, were properly excluded. *Pitts v. Arkansas*, 2019 Ark App. 107, 4, 571 S.W.3d 64, 68 (2019).[7]

To prevail on an ineffective assistance of counsel claim, Mr. Pitts must show: (1) that his counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) that there is a reasonable probability that the outcome would have been different but for the substandard performance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). A reasonable probability, in this context, is one that is sufficient to undermine confidence in the outcome of the trial (or direct appeal). *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694).

Assuming, without deciding, that Mr. Pitts' attorney rendered deficient performance by "taking" the 42 days between October 7 through November 18, 2014, Mr. Pitts' ineffective-assistance claim fails under the prejudice prong.

---

[7]  In Mr. Pitts' fourth Rule 37 petition, he asserted the same claim raised here – that his trial attorney rendered ineffective assistant by agreeing to the exclusion of the 42 days between October 7 and November 14, 2014. *Doc. 9-12 at 20-22*. Apparently misperceiving Mr. Pitts' claim as a stand-alone speedy-trial claim, the trial court denied relief on the ground that the speedy-trial issue was addressed on direct appeal. *Doc. 9-11 at 301*. On appeal of postconviction relief, the Arkansas Court of Appeals apparently did not recognize that Mr. Pitts was asserting an ineffective-assistance claim, stating that it had reviewed and rejected Pitts' speedy-trial claim on direct appeal. *Pitts v. State*, 2021 Ark. App. 242, 11 (2021).

Including the 42-day period in the speedy-trial calculation brings the pretrial period to 334 days, still under the 365-day limit. Mr. Pitts does not challenge the trial court's exclusion of the 78 days between March 2 and May 19, 2015.[8] Accordingly, Mr. Pitts fails to demonstrate a reasonable probability that the outcome of his criminal case would have been different had his attorney objected to the exclusion of the 42-day period. This failure requires the dismissal of the claim. *See Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim.").

Claim 1 should be dismissed.

### C.     Claims 2, 3, 5, and 9 Are Procedurally Defaulted

Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U.S.C. §§ 2254(b)(1), (c). Before filing a federal habeas petition, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of

---

[8] Such a challenge would be unsuccessful. "Periods of time attributable to delays from pretrial motions filed by the defendant may be excluded from the speedy-trial period under Rule 28.3." *Romes v. State*, 144 S.W.3d 750, 759, 356 Ark. 26, 40 (2004) (citations omitted). "The excludable period contemplated by the rule begins at the time the pretrial motion is made and includes those periods of delay attributable to the defendant until the motion is heard by the court and not more than thirty days thereafter." *Id.*

The state trial record confirms that Mr. Pitts filed motions to relieve his appointed counsel on March 2 and April 23, 2015. *Doc. 9-2 at 229, 237*. The trial court heard the motions during a May 19, 2015, hearing, and at Mr. Pitts' request, continued the existing trial date so that he could hire private counsel. *Doc. 9-3 at 291*. At a June 16, 2015, hearing, the trial court relieved Mr. Pitts' first appointed attorney and directed that another public defender be selected to represent Mr. Pitts. *Id. at 296-299*.

the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

When a federal habeas petitioner fails to fully exhaust claims in state court and the time for doing so has expired, those claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A petitioner can obtain federal habeas review of a procedurally defaulted claim only if he can demonstrate: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law;[9] or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice, such as the conviction of one who is actually innocent.[10] *Coleman*, 501 U.S. at 750.

---

[9] "Cause" for procedural default must be an external impediment that prevented the petitioner from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, (1986). To demonstrate prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions . . . [such that he] was denied fundamental fairness at trial." *Murra*y, 477 U.S. at 494 (internal quotation and punctuation omitted).

[10] In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court set out a demanding standard for gateway claims of actual innocence: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* at 324.

The Eighth Circuit has instructed that a gateway actual innocence claim must satisfy a two-part test: "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial." *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001) (citing *Schlup*, 513 U.S. at 327–28). The evidence is "only new if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Amrine*, 238 F.3d at 1029. "Second, the petitioner must establish 'that it is more likely than not that not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* at 1029 (quoting *Schlup*, 513 U.S. at 327).

Based on the record, Mr. Pitts *never* presented the following claims in state court: (1) Claim 2, asserting prosecutorial misconduct for allowing perjured testimony and making improper closing arguments; (2) Claim 3, asserting ineffective assistance of appellate counsel for failure to assert prosecutorial misconduct on direct appeal; (3) Claim 5, asserting ineffective assistance of trial counsel for failure to object to improper closing argument; and (4) Claim 9, asserting insufficient evidence.

Mr. Pitts argues that *any* procedural default is excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). However, the narrowly-drawn *Martinez* exception "treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim – ineffective assistance of *trial* counsel – in a single context – where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017) (emphasis added). Mr. Pitts' only claim potentially subject to the *Martinez* exception is Claim 5, asserting ineffective assistance of trial counsel for failure to object to improper closing arguments.

The Court cannot find cause to excuse a procedural default under *Martinez* unless the defaulted claim is *substantial*, meaning that has "some merit." *Martinez*, 566 U.S. at 14. To meet this requirement, a petitioner must make substantial case that: (1) his trial attorney performed deficiently and (2) the deficient performance

prejudiced his defense. *Dansby v. Hobbs*, 766 F.3d 809, 834–35 (8th Cir. 2014) (requiring a substantial showing on both prongs of the *Strickland* standard to show that underlying ineffective-assistance claim is substantial and has some merit). If a defaulted claim is either without merit or "wholly without factual support," it cannot be considered on federal habeas review. *Martinez*, 566 U.S. at 16.

In Claim 5, Mr. Pitts faults his trial attorney for failing to object when prosecutors allegedly vouched for the credibility of witnesses, opined about his guilt, referred to facts outside the record, and made statements intended to inflame the passions of the jury. *Doc. 3 at 14-23*. The closing arguments Mr. Pitts identified do not qualify as improper vouching, which "may occur when the government expresses a personal opinion about credibility, implies a guarantee of truthfulness, or implies it knows something the jury does not." *United States v. Roundtree,* 534 F.3d 876, 880 (8th Cir. 2008). Mr. Pitts' prosecutors merely recounted evidence before the jury and explained why that evidence reasonably supported the credibility of witnesses and Mr. Pitts' guilt. The prosecutors never implied that they had outside information or expressed personal opinions or beliefs. Although the prosecutors commented that the victims did not deserve to be shot or lose a loved one, these comments were not improper such that an objection would have been sustained. Accordingly, trial counsel's failure to object during closing arguments did not constitute ineffective assistance of counsel.

Even assuming prosecutors made improper arguments, which they did not, Mr. Pitts cannot establish prejudice. First, substantial evidence supported the jury's verdict. In other words, this was not a "close case" where "prejudicial remarks could have swayed the jury one way or the other." *Snell v. Lockhart*, 14 F.3d 1289, 1301 (8th Cir. 1994) (citing *Darden v. Wainwright*, 477 U.S. 168, 182 (1986)). Second, the trial court instructed jurors to base their decisions on the evidence alone, that closing arguments were not evidence, and to disregard any argument or comment by counsel having no basis in the evidence. *Doc. 9-5 at 277-280*; *Kellogg v. Skon*, 176 F.3d 447, 452–53 (8th Cir. 1999) (holding that prosecutor's remarks describing defendant as a monster and sexual deviant were inflammatory but habeas relief was not warranted because evidence of guilt was substantial, and the trial court instructed the jury to base its decision solely on the evidence and that counsel's arguments were not evidence).

As to Claims 2, 3, 5, and 9, the claims are procedurally defaulted, and Mr. Pitts has failed to show either cause and prejudice for the default or a fundamental miscarriage of justice. The claims should therefore be dismissed.

### D.    Claims 4 and 8 Were Reasonably Adjudicated on the Merits in State Court

Respondent argues that Claims 4 and 8 fail under the AEDPA's deferential standard of review for state court decisions. Section 2254(d) provides that when a state prisoner's claim has been adjudicated on the merits in state court, a federal

court "shall not" grant an application for habeas relief unless the state courts' adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." [11] "The question under AEDPA is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—'a substantially higher threshold' for a prisoner to meet." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### 1.    Claim 4

In Claim 4, Mr. Pitts presents three *Brady* claims that the Arkansas Supreme Court rejected when it denied his petition for writ of error coram nobis. In assessing the merits of the claims, the Arkansas Supreme Court correctly identified *Brady* as

---

[11] A state court decision is "contrary to" clearly established federal law if the state court either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A state prisoner may also seek federal habeas relief on the ground that the state court made an unreasonable determination of the facts. However, the state court's findings are subject to a deferential standard of review and are presumed correct unless the petitioner can rebut those findings through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also *James v. Bowersox*, 187 F.3d 866, 871 (8th Cir. 1999).

the governing, clearly established federal law and stated the essential elements: (1) the evidence at issue must be materially favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice must have ensued. *Pitts v. State*, 2021 Ark. 178, 3 (2021); see also *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

As explained in detail below, the Arkansas Supreme Court correctly applied *Brady* to the record before it and reasonably concluded that "Pitts's many claims fail because he does not demonstrate the State withheld any favorable evidence and that prejudice occurred." *Pitts v. State*, 2021 Ark. 178, 3.

### a.    Amanda Thornton Testimony

In the weeks preceding the April 30, 2014, shooting, Mr. Swanigan lived at Amanda Thornton's residence. Ms. Thornton testified at Mr. Pitts' trial that she saw Mr. Pitts with Mr. Swanigan four times before the shooting. First, on Sunday, April 27, 2014, Ms. Thornton and Mr. Swanigan went to a shooting range and fired guns, and en route to the shooting range, Mr. Swanigan stopped at Mr. Pitts' house to pick up a gun. *Doc. 9-4 at 479, 485*. Ms. Thornton testified she did not go inside Mr. Pitts' home, and Mr. Pitts came outside. When asked how she knew that the person she saw was Mr. Pitts, Ms. Thornton replied, "Because Steven told me we were going by there." *Id. at 501*. Second, Ms. Thornton testified that the night of April

28, Mr. Swanigan and Mr. Pitts "brought some electronics" to her house. *Id. at 503*. Third, she testified that on April 29, Mr. Swanigan and Mr. Pitts picked her up at court. *Id. at 519.* Fourth, Ms. Thornton testified that the morning of April 30, 2014, she saw Mr. Swanigan and Mr. Pitts together in Mr. Swanigan's vehicle, which was parked at her house. *Id at 505*.

Two weeks earlier at Mr. Swanigan's trial, Ms. Thornton testified that she did not "meet" Mr. Pitts until April 29, when he and Mr. Swanigan picked her up from court. *Swanigan v. State*, 2019 Ark. App. 296, 6 ( 2019). In addition, she did not mention that Mr. Pitts was with Mr. Swanigan at her house the morning of April 30. *Id*.

On cross-examination, defense counsel asked Ms. Thornton whether she told the truth at Mr. Swanigan's trial when she testified that she met Mr. Pitts for the first time on April 29. *Doc. 9-4 at 519*. Ms. Thornton explained that she *saw* Mr. Pitts for the first time on April 27, before she and Mr. Swanigan went to the shooting range, but she first *met* Mr. Pitts on April 29, when he and Mr. Swanigan picked her up from a court. *Id*.

In his coram nobis petition, Mr. Pitts argued that the State violated his right to due process by failing to provide him Ms. Thornton's "new story" about seeing him on April 27, 28, and 30. *Doc. 9-16 at 2-3*. He argued that if the prosecution had disclosed "all" of Ms. Thornton's statements before trial, he could have presented

"pictures proof and witnesses to show his whereabouts on the days [the] State lied about." *Id. at 3*.

The Arkansas Supreme Court correctly noted that: (1) Ms. Thornton's testimony at Mr. Swanigan's trial was a matter of public record, not subject to being withheld; and (2) defense counsel's cross-examination of Ms. Thornton confirmed that he knew about her testimony in Mr. Swanigan's trial. *Pitts v. State*, 2021 Ark. at 3–4. The Court rejected Mr. Pitts' claim that the prosecution allowed Ms. Thornton to testify falsely, noting "trial was when Pitts should have raised his argument that the prosecutor promoted false testimony." *Id. at 4*.

The Arkansas Supreme Court reasonably concluded that Mr. Pitts failed to demonstrate that the State withheld favorable evidence or that prejudice occurred. Mr. Pitts had notice that Ms. Thornton would testify, and the prosecution had no duty under *Brady* to disclose her anticipated testimony or her prior testimony, which was publicly available. *United States v. Flores–Mireles*, 112 F.3d 337, 340 (8th Cir. 1997) (noting that there is no duty under *Brady* to disclose evidence that is neutral or inculpatory or evidence available to the defense from other sources).

Furthermore, the record does not support Mr. Pitts' allegation that the prosecution permitted Ms. Thornton to testify falsely. Ms. Thornton's prior testimony focused on her observation of Mr. Swanigan's conduct, and contrary to Mr. Pitts' suggestion, her testimony at Mr. Swanigan's trial did not conflict with her

testimony that she observed Mr. Pitts and Mr. Swanigan together on April 27, 28, 29, and 30. Under the § 2254(d) standard, the Arkansas Supreme Court's decision is entitled to deference and cannot be relitigated here.

### b.    Ciara Morgan's Testimony

Ciara Morgan and Mr. Swanigan were acquaintances. *Doc. 9-4 at 327*. At Mr. Pitts' trial, Ms. Morgan testified that on April 30, 2014, before the shooting, Mr. Swanigan and another person came to her home and borrowed a white Cadillac with a blue roof.[12] *Doc. 9-4 at 333*. She further testified that the next day, she identified Mr. Pitts from a photo lineup and told officers he was the person who accompanied Mr. Swanigan when he borrowed her car. *Id. at 337*.

In support of his coram nobis petition, Mr. Pitts claimed that the State violated *Brady* by failing to disclose "all" of Ms. Morgan's statements, and he suggested that his "name got into the case" because of a meeting between Ms. Morgan and Mr. Swanigan. *Doc. 9-16 at 4-5*. The Arkansas Supreme Court held that Mr. Pitts' vague and conclusory allegations failed to support a *Brady* claim, noting, "Pitts does not identify any statement by Morgan favorable to the defense or that could have prevented rendition of the judgment." *Pitts*, 2021 Ark. at 4. Mr. Pitts has failed to

---

[12] Other evidence presented by the State demonstrated that the Cadillac Mr. Swanigan borrowed from Ms. Morgan was the same vehicle that fled the scene of the shooting.

show that the Arkansas Supreme Court's rejection of this *Brady* claim was unreasonable.  Re-litigation of the claim in federal habeas is therefore barred.

### c.      Photo Lineup

Jordan Garner worked at a Sonic drive-in near the crime scene. At Mr. Pitts' trial, Mr. Garner testified that between 4:30 and 5:00 p.m. the day of the shooting, a white Cadillac with a blue roof drove into the Sonic parking lot, traveling the wrong way, and nearly hit him. *Doc. 9-4 at 463-465*. Mr. Garner testified that he identified Mr. Swanigan as the driver from a photo lineup (*Id. at 467*), but he was unable to identify the passenger from a second photo lineup. *Id. at 475.*

In his coram nobis petition, Mr. Pitts alleged that the State withheld a copy of "a photo lineup" shown to Mr. Garner. *Doc. 9-16 at 8.* He argued, without explanation, that the photo was exculpatory "and could've cast doubt . . . about [his] guilt." *Id*. The Arkansas Supreme Court rejected this claim, noting: "At trial, the State showed the [first] photo lineup to Garner and he again identified the co-defendant. Pitts had the ability to cross-examine Garner about the photo lineup during trial." *Pitts*, 2021 Ark. 178, 4–5 (2021). Assuming the State withheld either the first or second lineup photo from Mr. Pitts before trial, the Arkansas Supreme Court reasonably concluded that Mr. Pitts failed to establish prejudice.  That decision is entitled to deference under § 2254(d).

22

## 2.    Claim 8

In Claim 8, Mr. Pitts argues that the trial court committed reversible error by denying his motion to suppress un-*Mirandized*, custodial statements he made to his parole officer. In affirming the trial court's ruling, the Arkansas Court of Appeals stated the undisputed background facts[13] as follows:

> Five days after [Pitts'] arrest, Courtney Henry, [his] parole officer, visited him at the jail to read a parole-violation report based on the new charges he faced. Pitts made several statements to her that he later moved to suppress.
>
> At the suppression hearing, Henry testified that on May 12, 2014, she went to the jail to serve Pitts with a parole-violation report. When Henry informed Pitts that he had been charged with capital murder, he said, "Why do they not have an accessory law in Arkansas?" Henry asked Pitts if he was an accessory, to which he responded, "Well, I'm not a capital murderer." According to Henry, Pitts said that he should not have been charged with capital murder and that no motive could be proved. She said that Pitts had initially used the pronoun "we," before stopping midsentence to instead say "they," when referring to the . . . perpetrators . . . . Henry said that Pitts had stated that the police did not know whether the suspects had gone to the home to rob the place, talk with someone, or "deal with a prior situation between people." Henry said that Pitts—not in response to questioning—discussed the lack of evidence against him. For example, he stated that he knew that his face was not shown on camera. Henry testified that she saw Pitts again the following day, May 13, to notify him of his right to a hearing. She said that Pitts again spoke of the evidence against him and what he had told investigators without any questioning by her, aside from asking whether he wished to waive the hearing. Henry admitted that, although Pitts was in custody, she did not read him *Miranda* warnings before speaking with him on either day. She explained that she had been "acting under the scope of a parole officer, not an investigator."

---

[13] Mr. Pitts does not dispute the Arkansas Court of Appeal's determination of facts, which are presumed correct. 28 U.S.C. § 2254(e)(1).

> The trial court denied Pitts's motion to suppress and found that he had made spontaneous statements to Henry that were not in response to questioning or interrogation. The trial court also found that Pitts had been advised of his *Miranda* rights on May 7, 2014, five days before he spoke with Henry, so he was aware of his rights at the time he made the spontaneous statements to Henry.

*Pitts v. State,* 571 S.W.3d 64, 69, 2019 Ark. App. 107, 5-6 (2019).

On direct appeal, Mr. Pitts' counsel argued that he made extremely incriminating, un-*Mirandized*, non-spontaneous statements in response to a custodial interrogation by his parole officer. *Doc. 9-8 at 182-187*. However, he did not address the trial court's second basis for rejecting his claim – that he had received *Miranda* warnings five days before he met with his parole officer and was aware of his rights when he made incriminating statements. *Id*.

In affirming the trial court's suppression ruling on direct appeal, the Arkansas Court of Appeals acknowledged the governing federal law. Citing *Miranda v. Arizona*, 384 U.S. 436 (1966), the court stated:

> The United States Constitution's Fifth Amendment prohibition against compelled self-incrimination requires that an accused be given a series of warnings, including that the accused has the right to remain silent and the right to the presence of an attorney, before he or she is subjected to "custodial interrogation."

*Pitts,* 571 S.W.3d at 69.

The Arkansas Court of Appeals held that reading aloud the contents of Mr. Pitts' parole violation document did not amount to interrogation but asking Mr. Pitts

whether he was an accessory to capital murder presented a closer question. The Court of Appeals nonetheless affirmed based on the trial court's finding that Mr. Pitts was aware of his rights when he made inculpatory statements to his parole officer because he had received *Miranda* warnings five days earlier.

The Arkansas Court of Appeals could have affirmed based solely on Arkansas' well-established rule that when an appellant fails to challenge a trial court's alternate, independent basis for a ruling, the appellate court "will not reverse." *Barber v. State*, 2015 Ark. App. 120, 5, 2015 WL 831231, at *2 (Ark. App. Feb. 25, 2015) (citing *Pugh v. State,* 351 Ark. 5, 89 S.W.3d 909 (2002)). However, the court addressed the substance of the trial court's alternate reason for denying Mr. Pitts' motion to suppress – that based on a previous *Miranda* warning, he was aware of his rights. The Arkansas Court of Appeals stated:

> There is no constitutional requirement that a suspect be warned of his or her *Miranda* rights each time the suspect is questioned. There is likewise no mechanical formula for measuring the longest permissible interval between the last warning and the confession. *Miranda* warnings need only be repeated when the circumstances have changed so seriously that the accused's answers are no longer voluntary, or the accused is no longer making a knowing and intelligent relinquishment or abandonment of his or her rights.

*Id*. 571 S.W.3d at 70 (citing *Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005) (citing *Conner v. State,* 334 Ark. 457, 982 S.W.2d 655 (1998) and *Wyrick v. Fields,* 459 U.S. 42 (1982)).

To prevail, Mr. Pitts must show that the state court applied *Miranda* to the facts of his case in an objectively unreasonable manner. *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling . . . was so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). He has failed to show that the state court ruling unreasonably applied either applicable facts or law.

The Arkansas Court of Appeals' decision is therefore entitled to deference under § 2254(d).

Claims 4 and 8 should be dismissed.

### E.    Claim 6 Has No Merit

In Claim 6, Mr. Pitts argues that his appellate attorney provided ineffective assistance by failing to challenge the trial court's alternate, independent basis for denying his motion to suppress: that Mr. Pitts' parole officer was not required to "re-*Mirandize*" him.

Mr. Pitts' Rule 37 petition included the same claim, which the trial court denied, stating: "Petitioner's attorney challenged the ruling of the trial court. This issue was taken up on appeal and rejected by the Arkansas Court of Appeals. Issues decided on appeal are not cognizable in a Rule 37 Petition." *Doc. 9-11 at 300.* Under a well-established Arkansas rule, issues settled on direct appeal are considered the

law of the case and cannot be reargued in a Rule 37 petition. *State v. Fudge*, 206 S.W.3d 850, 863, 361 Ark. 412, 429 (2005) (citing *Camargo v. State,* 337 Ark. 105, 987 S.W.2d 680 (1999); *Johnson v. State,* 356 Ark. 534, 157 S.W.3d 151 (2004)).

Mr. Pitts appealed, and the Arkansas Court of Appeals affirmed, stating: "Rule 37 does not provide an opportunity for an appellant to reargue points that were settled on direct appeal." *Pitts v. State*, 624 S.W.3d 700, 709, 2021 Ark. App. 242, 9 (2021) (citing *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). The appellate court made clear that it had affirmed the trial court's suppression ruling for two independent reasons, including that "there is no constitutional requirement that a suspects in custody must be read their *Miranda* rights every time they are questioned." *Pitts*, 624 S.W.3d at 709. The court added: "Pitts was Mirandized five days before the parole officer asked him if he was an accessory to capital murder; therefore, it was not necessary for his parole officer to inform him of his *Miranda* rights again." *Id*.

Respondent argues that the Arkansas Court of Appeals' adjudication is entitled to deference under § 2254(d) because it rejected Mr. Pitts' ineffective-assistance-of-counsel claim on the merits based on a reasonable application of the two-pronged standard under *Strickland*. *Doc. 9 at 26*. The undersigned disagrees. The Arkansas Court of Appeals affirmed the trial court for the express reason that Mr. Pitts could not reargue points that were settled on direct appeal. *Pitts*, 624

S.W.3d at 709. The court implicitly recognized that Mr. Pitts could not succeed with his ineffective-assistance-of-counsel claim without attacking its merits-based determination on direct appeal, but the court *did not* pass on the merits of Mr. Pitts' related ineffective-assistance-of-counsel claim.[14]

However, considered as a stand-alone ineffective assistance of counsel claim, Claim 6 has no merit. To prevail, Mr. Pitts must establish that his appellate counsel performed deficiently and that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687. "Prejudice, within the meaning of *Strickland,* occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." *Zinzer v. State of Iowa*, 60 F.3d 1296, 1299 (8th Cir. 1995).

Mr. Pitts cannot show that the result of his direct appeal would have been different if appellate counsel had specifically challenged the trial court's alternate reason for denying his motion to suppress. Although the Arkansas Court of Appeals *could* have affirmed the trial court solely because Mr. Pitts failed to address the trial court's alternate basis for denying his motion to suppress, it considered both bases

---

[14] Respondent does not argue that the independent and adequate state ground doctrine bars review of Claim 6. The doctrine bars federal habeas review when, as in this case, the state court declined to address the merits of a federal claim based on a state rule, whether substantive or procedural. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). In the habeas context, application of the doctrine is based on comity and federalism principles, not subject matter jurisdiction. Accordingly, if the State fails to raise the issue, it is waived. See *Ford v. Norris*, 67 F.3d 162, 165 (8th Cir. 1995).

for the ruling and affirmed on both grounds. Accordingly, appellate counsel's failure to challenge both grounds for the trial court's ruling did not prejudice Mr. Pitts or render the results of his direct appeal fundamentally unfair.

Claim 6 should be dismissed.

### F.    Claim 7 Is Not Cognizable

In Claim 7, Mr. Pitts asserts a stand-alone claim that the trial court violated his speedy-trial rights under Rule 28.1 of the Arkansas Rules of Criminal Procedure. Federal habeas corpus relief is not available to correct errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67 (1991). Thus, Mr. Pitts' claim that the trial court violated his rights under Arkansas' speedy-trial law does not present a claim reviewable by this federal habeas court.[15] *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) ("Violation by state officials of a state speedy trial law, taken alone, does not present a federal claim reviewable on habeas petition."). Accordingly, Claim 7 should be dismissed.

### IV.    Conclusion

IT IS THEREFORE RECOMMENDED that:

---

[15] Compliance with state law does not necessarily mean that the right to a speedy trial granted under the Sixth Amendment to the United States Constitution has been satisfied. *Williams v. Lockhart*, 772 F.2d 475, 478 (8th Cir. 1985) (citing *Wallace v. Lockhart,* 701 F.2d 719, 729 (8th Cir.1983)). However, Mr. Pitts did not invoke his Sixth Amendment right to a speedy trial in state court or in his § 2254 petition.

1.      Petitioner Benjamin Pitts' § 2254 Petition for Writ of Habeas Corpus (*Doc. 2*) be DISMISSED with prejudice.

2.      A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

Dated 1 June 2023.

_____

UNITED STATES MAGISTRATE JUDGE